# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ONTARIO A. DAVIS,

               Plaintiff,

v.

JOHN SCHOTT, ANDREW MOLINA, JOSEPH ESQUEDA, JOSE VIERA, KENNETH PETERS, DEREK L. VERNON, RYAN CARPENTER, VINCENT LOPEZ, CHRISTOPHER RANDAZZO, MATTHEW PHILLIPSON, TIMOTHY RABIDEAU, and MATTHEW OMALIA,

               Defendants.

Case No. 17-CV-1355-JPS

**ORDER**

      Plaintiff, who is incarcerated at Sturtevant Transitional Facility, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). Plaintiff has paid the filing fee in this matter in full. This case comes before the Court on screening Plaintiff's complaint pursuant to 28 U.S.C. § 1915A.

      Notwithstanding the payment of any filing fee, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (citations omitted); *accord Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must then "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

Plaintiff's complaint concerns his arrest by Defendants, all officers with the Milwaukee Police Department, on April 14, 2015. (Docket #1 at 1). He claims that Defendants conspired to illegally search his residence and vehicle and to arrest him without supporting probable cause to believe he had committed a crime. *Id.* at 1–3. Specifically, Plaintiff alleges that some of the Defendants were conducting surveillance that day on the apartment of a woman, Monita Roundtree ("Roundtree"), in Milwaukee, in hopes of capturing a man, Norman Rhodes ("Rhodes"), for whom an arrest warrant had been issued for violations of his parole conditions. *Id.* at 2. Defendants observed Plaintiff drive up to the residence in his car accompanied by another woman. *Id.* Rhodes then drove up to the Roundtree residence in his

own car, which was of a different make, model, and color than Plaintiff's. *Id.* Rhodes had Roundtree and Roundtree's child as passengers. *Id.* Plaintiff and the others entered the home. *Id.*

Defendants allegedly observed Rhodes exit the residence, alone, on at least three occasions that day but decided not to arrest him at those times, despite knowing that they had only an arrest warrant and not a warrant to search the Roundtree residence. *Id.* Defendants nevertheless surrounded the home and forced their way inside, without the residents' consent, without a warrant or probable cause, and without an exigent need to do so. *Id.* Upon entering the home, Defendants immediately arrested Plaintiff, without probable cause, and purportedly only because he is African American. *Id.*

Defendants then manufactured probable cause to support a search of Plaintiff's car. *Id.* Not only did they seize his car keys after his arrest, they also employed a K-9 unit in the area. *Id.* Plaintiff does not say that the K-9 alerted to the presence of narcotics or other contraband near his vehicle, but the Court assumes that this occurred, or that Defendants lied and said it did. *Id.*

Next, Plaintiff alleges that two of the Defendants made false statements in affidavits used to support a search warrant for Plaintiff's home. *Id.* at 3. That search warrant was executed the next day, April 15, 2015. *Id.*

On April 16, 2015, two other Defendants interrogated Plaintiff at the local police station and attempted, in Plaintiff's estimation, to coerce him into becoming a confidential informant against Rhodes. *Id.* Plaintiff refused, and he claims that this led to police retaliation in the form of ransacking his apartment and levying false charges against him. *Id.*

Publically available Wisconsin court records reveal that Plaintiff was charged with possession of a firearm by a felon, in violation of Wis. Stat. § 941.29(2), in Milwaukee County Circuit Court Case No. 2015CF002164.[1] That prosecution was initiated by criminal complaint filed May 13, 2015. Trial in Plaintiff's criminal case began on December 19, 2016. On December 21, 2016, a jury acquitted Plaintiff of the charge against him.

The Court, appreciative of the low bar required of *pro se* complaints at the screening stage, finds that Plaintiff may proceed on most of the claims implicated in his complaint. Despite the brevity of his complaint, Plaintiff's allegations implicate a wide variety of potential claims. These all arise under the Fourth Amendment, as applicable to state actors through the vehicle of the Fourteenth Amendment.

First, police officers generally must have probable cause to believe that a person has committed a crime in order to arrest him. *Bailey v. United States*, 568 U.S. 186, 192 (2013) ("[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime"). Thus, taking as true Plaintiff's allegation that he was arrested on April 14, 2015 simply because of his race and because he was in a house with an absconding parolee, the Court finds that a claim based on his unlawful arrest should proceed. Moreover, Plaintiff says that his arrest premised on his race was the result of Defendants' conspiracy to violate his civil rights, and so he will be permitted to proceed on a parallel claim under Section 1985. *See* 42 U.S.C. §

---

[1] Although Plaintiff does not provide this information in his complaint, it appears that is the case involving the alleged false charges brought against him in retaliation for his refusal to cooperate with police, as Rhodes is mentioned as a co-defendant and several of the Defendants, as well as Roundtree, testified during a hearing on Plaintiff's motion to suppress.

1985(3); *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002) (a Section 1985 conspiracy claim must show "some racial, or otherwise class-based, invidiously discriminatory animus behind the conspirator's actions").

Second, in order to perform a search, officers must have either a warrant signed by a neutral magistrate and supported by probable cause, or some circumstance must exist obviating the need for a warrant. *See United States v. Paige*, 870 F.3d 693, 701–02 (7th Cir. 2017). Here, Plaintiff may proceed on a claim that the search of the Roundtree residence was unlawful, as officers lacked either a warrant or probable cause to enter the home. The arrest warrant for Rhodes was insufficient on its own to authorize their entry into Roundtree's dwelling. *Mascorro v. Billings*, 656 F.3d 1198, 1205 (10th Cir. 2011) ("[A]n arrest warrant does not give police carte blanche to enter any dwelling in search of the object of the warrant"). Further, it is important to appreciate that although this was not Plaintiff's home, on the facts as alleged, he appears to have been Roundtree's social guest who remained at the home for several hours before it was entered by police. Against that backdrop, the Court concludes at this early stage that Plaintiff himself had a legitimate expectation of privacy in the residence and therefore has standing to sue for its illegal search. *See Minnesota v. Carter*, 525 U.S. 83, 90–91 (1998); *United States v. Rhiger*, 315 F.3d 1283, 1286 (10th Cir. 2003).

Third, Plaintiff may proceed on a claim that the search of his car was unlawful. Assuming, as the standard of review requires, that the officers lacked a warrant to search Plaintiff's car, their search would be unlawful unless part of a valid search incident to arrest or if they had probable cause to believe that evidence of a crime was inside the vehicle. *Paige*, 870 F.3d at 702. The search incident to arrest exception probably does not apply, as

Plaintiff was not within reaching distance of the car at the time he was arrested. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). But because of the presence of the K-9 unit, it may very well be that the officers developed probable cause to believe that evidence of criminal activity was in the vehicle. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999). In any event, Plaintiff has alleged that whatever probable cause the officers claimed to have was fabricated, and so the Court will permit the claim to proceed at this time.

Next, Plaintiff will be permitted to proceed on a claim that the Defendants engaged in a civil conspiracy to violate his constitutional rights. The asserted bases for this claim are the alleged false arrest on April 14, 2015 and the search of Plaintiff's car shortly thereafter. (Docket #1 at 1). A civil conspiracy under Section 1983 requires an agreement among the co-conspirators to deprive the plaintiff of his rights and an overt act in furtherance thereof. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011); *Cerfalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). While the allegations of conspiratorial intent are sparse, Plaintiff has identified the parties, purpose, and date of the conspiracy, which is enough to pass the screening stage. *See Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006).

Further, Plaintiff may proceed on his claim that two of the officers lied in an application for a search warrant for his home. A warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue. *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003); *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Thus, even if a criminal defendant can demonstrate that the attesting officer made a false statement (or omitted a material fact), the court must

nevertheless consider whether the content of the affidavit, setting aside the false material (or including the omitted material), is sufficient to establish probable cause. *Franks*, 438 U.S. at 156.

Plaintiff provides very little detail about the warrant application and the bases cited for the officers' probable cause determination. Thus, it is impossible to say at this juncture whether the warrant could be valid even in the face of the officers' allegedly false statements. Notably, Plaintiff's motion to suppress during his prosecution was denied, suggesting that he was prejudiced by whatever false statements may have been made. In the end, in light of the exceedingly lenient standard of review, the Court will permit this claim to proceed as well.

Finally, Plaintiff may proceed on a claim that the police retaliated against him for refusing to become an informant against Rhodes. This retaliation took two forms, only one of which is cognizable here. First, police officers unnecessarily ransacked his home during a search, which, taken as true, violates the Fourth Amendment's command that the manner of every search must be reasonable. *Bell v. Wolfish*, 441 U.S. 520, 560 (1979) (searches must be conducted in a reasonable manner and not in "an abusive fashion"). Second, officers brought purportedly false charges against Plaintiff for being a felon in possession of a firearm. This aspect of the retaliation theory is not actionable in the context of this Section 1983 action. In *Newsome v. McCabe*, the Seventh Circuit held that there is not "constitutional tort of malicious prosecution where a state provides a meaningful tort remedy for malicious prosecution." *Armstrong v. Daily*, 786 F.3d 529, 541 (7th Cir. 2015) (citing *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001)). And, the Seventh Circuit has held that "the availability of Wisconsin's tort for malicious prosecution forecloses a federal claim under

§ 1983 that [a defendant] maliciously launched a prosecution." *Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2011). Thus, to the extent Plaintiff alleges malicious prosecution, he must bring that claim under state law in state court.

For the reasons stated above, Plaintiff shall be permitted to proceed against Defendants on the following claims: (1) false arrest, in violation of the Fourth Amendment; (2) conspiracy to violate Plaintiff's civil rights based on Plaintiff's race, in violation of 42 U.S.C. § 1985; (3) unlawful search of the Roundtree residence, in violation of the Fourth Amendment; (4) unlawful search of Plaintiff's vehicle, in violation of the Fourth Amendment; (5) conspiracy to violate Plaintiff's civil rights under the Fourth Amendment arising from his arrest and the search of his vehicle, in violation of the Fourth Amendment; (6) knowingly making false statements in a warrant application, in violation of the Fourth Amendment; and (7) conducting a search of Plaintiff's home in an unreasonable manner, in violation of the Fourth Amendment. 28 U.S.C. § 1915A(b).[2] For all of these claims, Plaintiff will be permitted to proceed against all Defendants at this time, except the claim arising from false statements in the warrant

---

[2]Because Plaintiff was acquitted of the charges in the prosecution arising from the conduct underlying this case, the Court has not discussed the impact of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), which holds that a claim for damages may not be pursued if its success would necessarily imply the invalidity of a criminal conviction or sentence. However, notwithstanding his acquittal, the *Heck* bar might apply to some or all of Plaintiff's claims if he was a parolee during this period and his parole was revoked for his conduct, as *Heck* reaches both criminal convictions and subsequent parole revocations. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000). Plaintiff is currently confined in prison—is it because of just such a revocation? Wisconsin's publically available court records do not clearly answer this question in Plaintiff's case, and so the Court leaves it for another day.

§ 1983 that [a defendant] maliciously launched a prosecution." *Gordon v. Miller*, 528 F. App'x 673, 674 (7th Cir. 2011). Thus, to the extent Plaintiff alleges malicious prosecution, he must bring that claim under state law in state court.

For the reasons stated above, Plaintiff shall be permitted to proceed against Defendants on the following claims: (1) false arrest, in violation of the Fourth Amendment; (2) conspiracy to violate Plaintiff's civil rights based on Plaintiff's race, in violation of 42 U.S.C. § 1985; (3) unlawful search of the Roundtree residence, in violation of the Fourth Amendment; (4) unlawful search of Plaintiff's vehicle, in violation of the Fourth Amendment; (5) conspiracy to violate Plaintiff's civil rights under the Fourth Amendment arising from his arrest and the search of his vehicle, in violation of the Fourth Amendment; (6) knowingly making false statements in a warrant application, in violation of the Fourth Amendment; and (7) conducting a search of Plaintiff's home in an unreasonable manner, in violation of the Fourth Amendment. 28 U.S.C. § 1915A(b).[2] For all of these claims, Plaintiff will be permitted to proceed against all Defendants at this time, except the claim arising from false statements in the warrant

---

[2]Because Plaintiff was acquitted of the charges in the prosecution arising from the conduct underlying this case, the Court has not discussed the impact of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), which holds that a claim for damages may not be pursued if its success would necessarily imply the invalidity of a criminal conviction or sentence. However, notwithstanding his acquittal, the *Heck* bar might apply to some or all of Plaintiff's claims if he was a parolee during this period and his parole was revoked for his conduct, as *Heck* reaches both criminal convictions and subsequent parole revocations. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000). Plaintiff is currently confined in prison—is it because of just such a revocation? Wisconsin's publically available court records do not clearly answer this question in Plaintiff's case, and so the Court leaves it for another day.

application, which is expressly lodged only against Defendants John Schott and Kenneth Peters.[3]

The Court closes by addressing the matter of service of process in this case. In cases where prisoners seek and are granted leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(d) requires the Court to effect service of the summons and complaint on the defendants. 28 U.S.C. § 1915(d). However, Plaintiff did not seek leave to proceed *in forma pauperis*. Instead, he paid the filing fee for this case in full. As such, he is not entitled to service by the Court. Nevertheless, under Federal Rule of Civil Procedure 4(c)(3), a plaintiff may request that the U.S. Marshals Service serve the summons and complaint on the defendants. Fed. R. Civ. P. 4(c)(3). If Plaintiff desires the U.S. Marshal Service to effect service in this case, he must notify the Court within fourteen (14) days of the date of this Order.

Plaintiff is advised that that Congress requires the U.S. Marshals Service to charge for making or attempting service. 28 U.S.C. § 1921(a). Further, Congress has not made any provision for these fees to be waived either by the court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. § 0.114(a)(2)–(3). The U.S. Marshal will give Plaintiff information on how to remit payment if he requests Marshal service. The court is not involved in collection of the fee.

---

[3]Plaintiff does not name every Defendant in the body of his complaint. This would normally preclude any claims from moving forward past screening against those unnamed defendants. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). However, the state-court records make clear that certain named defendants, such as Jose Viera, were implicated in the relevant events even though Plaintiff appears to have omitted an explanation of his role. The Court will permit the present claims to proceed against all the Defendants on the understanding that each Defendant may seek dismissal of claims in which he had no part.

Accordingly,

**IT IS ORDERED** that a copy of this order be sent to the officer in charge of the agency where the inmate is confined;

**IT IS FURTHER ORDERED** that if Plaintiff desires the U.S. Marshals Service to effect service of the summons and complaint on Defendants, he shall notify the Court to that effect within **fourteen (14) days** of the date of this Order; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, Plaintiff need not mail copies to Defendants. All Defendants will be served electronically through the court's electronic case filing system. Plaintiff should also retain a personal copy of each document filed with the court.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 23rd day of October, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge