# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ONTARIO DAVIS,<br><br>      Plaintiff,<br><br>v.<br><br>JOHN SCHOTT, ANDREW MOLINA, JOSEPH ESQUEDA, JOSE VIERA, KENNETH PETERS, DEREK L. VERNON, RYAN CARPENTER, VINCENT LOPEZ, CHRISTOPHER RANDAZZO, MATTHEW PHILLIPSON, TIMOTHY RABIDEAU, and MATTHEW OMALIA,<br><br>      Defendants. | Case No. 17-CV-1355-JPS<br><br>**ORDER** |

  On October 3, 2017, Plaintiff submitted a complaint alleging violations of his Fourth Amendment rights and conspiracies to violate his civil rights pursuant to 42 U.S.C. §§ 1983 and 1985. (Docket #1). The Court screened the complaint and allowed him to proceed on claims of unlawful arrest, conspiracies under Sections 1983 and 1985, unlawful search of a residence, unlawful search of a car, unlawful acquisition of a warrant, and retaliation by ransacking a residence. (Docket #3 at 9). On November 15, 2018 the defendants filed motions for summary judgment. (Docket #53 and #58). Defendant Kenneth Peters ("Peters") moved for summary judgment on the claims of unlawful arrest, conspiracy, unlawful search of a car and unlawful acquisition of a warrant, on the grounds of issue preclusion, lack of evidence, and lack of personal involvement. (Docket #54). Defendants

John Schott ("Schott"), Andrew Molina ("Molina"), Joseph Esqueda ("Esqueda"), Jose Viera ("Viera"), Derek Vernon ("Vernon"), Ryan Carpenter ("Carpenter"), Vincent Lopez ("Lopez"), Christopher Randazzo ("Randazzo"), Matthew Phillipson ("Phillipson"), Timothy Rabideau ("Rabideau"), and Matthew Omalia ("Omalia") (collectively, the "Officer Defendants") moved for summary judgment on all claims on the grounds that Plaintiff failed to respond to their Requests for Admission and that the doctrine of *Heck v. Humphrey* bars Plaintiff's claims. (Docket #59). Those motions are now fully briefed. For the reasons stated below, the Court will grant Peters' motion for summary judgment and grant in part the Officer Defendants' motion for summary judgment.

1. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that her case is

convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

## 2. REQUESTS FOR ADMISSION

The Officer Defendants moved for summary judgment on the grounds that Plaintiff failed to respond to discovery requests. On June 28, 2018, the Officer Defendants properly served Plaintiff with requests for admission, requests for production of documents, and interrogatories. During Plaintiff's deposition on July 25, 2018, he confirmed that he had received the discovery requests and planned to respond to them, but needed help preparing responses. Ultimately, he never responded. Plaintiff now attempts to dispute that he received the requests for admission, but in light of the deposition transcripts, this argument is unavailing.

However, Plaintiff also explains that he thought that discovery was "mutually put on hold," until Peters and the Officer Defendants disabused him of this by filing their motions for summary judgment in November. (Docket #73 at 9). The Officer Defendants confirm that they were in settlement discussions, but explain that they never agreed to put discovery on hold. It is entirely possible that Plaintiff was confused by the settlement discussions, or mistakenly believed that he had more time to respond to the requests for admission. He has disputed material facts in his responses to the proposed statements of facts, (Docket #73 and #74), although he does not specifically counter the argument regarding the requests for admission in his opposition to summary judgment.

Under Federal Rule of Civil Procedure 36(a)(3), a request for admission is deemed admitted unless the party to whom the request is directed timely objects or responds. In this circuit, it is "well established

that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). However, federal courts are generally "reluctant to use Rule 36. . .as a snare for. . . unwary pro se [litigants]." *United States v. Turk*, 139 F.R.D 615, 617–18 (D. Md. 1991) (holding that it would not serve the interests of justice to grant summary judgment against pro se defendant who failed to respond to requests for admission without otherwise giving him the opportunity to be heard on facts central to the litigation); *United States for Graybar Elec. Co., Inc. v. TEAM Const., LLC*, 275 F. Supp. 3d 737, 745 (E.D.N.C. 2017) (declining to allow a party to rely on un-answered admissions as evidence on summary judgment where the requests for admission asked the party from whom discovery was requested to "disavow the factual bases for his own crossclaims" and where the requesting party never moved to compel a response); *In re Savage*, 303 B.R. 766, 773 (D. Md. 2003) ("Federal Rule of Civil Procedure 36 was not intended to be used as a technical weapon to defeat the rights of pro se litigants to have their cases fairly judged on the merits."). Additionally, courts have discretion in determining whether to permit withdrawal or amendment of a matter deemed admitted "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party." Fed. R. Civ. P. 36(b); *Perez v. Miami-Dade Cty.*, 297 F.3d 1255, 1268 (11th Cir. 2002) (permitting withdrawal of deemed admissions because "the inconvenience in having to gather evidence. . .does not rise to a [justifiable] level of prejudice") (citations and internal quotations omitted); *Schendzielos v. Borenstein*, 2016 WL 614473, at *4 (D. Colo. Feb. 16, 2016) (ordering withdrawal of any deemed admission at summary judgment where it

preserved the presentation of the merits of the case and would not prejudice the party).

For these reasons, the Court declines to allow the unanswered requests for admission as evidence for the purpose of summary judgment. Many of the requests for admission are conclusions of law that directly contradict what Plaintiff alleged in his complaint. For example, the Officer Defendants request the following admissions: "[D]efendant officers did not violate Plaintiff's civil rights"; "No false statements were listed in the Affidavit for Search Warrant of the Residence"; "The officer's search of Plaintiff's residence was not conducted in an unreasonable manner in violation of any of Plaintiff's civil rights." (Docket #63-1 at 3–4). Defendants never filed a motion to compel responses—perhaps because a failure to respond to these requests might lead to an admission. Yet these were legal questions that Defendants knew, from the moment the complaint was filed, that they would need to litigate. They are not suddenly prejudiced for having to compile evidence in support of their positions. Accordingly, the Court will not consider the requests for admission for the purpose of evaluating facts on summary judgment.

3. **RELEVANT FACTS**

On April 14, 2015, the Milwaukee Police Department ("MPD") was in the process of conducting surveillance on Norman Rhodes ("Rhodes"), who is not a party to this litigation. An arrest warrant had been issued for Rhodes because he had violated terms of his parole. The officers involved in this case were using a confidential informant ("CI") to gain information about Rhodes. The CI gave Schott the address of an apartment where he believed that Rhodes lived ("the Apartment"). The CI also said that Rhodes was using a handgun to engage in the sale of marijuana. Based on this

information, Schott began to conduct surveillance of the Apartment along with Esqueda and Molina.

Against this backdrop, Plaintiff's story unfolds: Plaintiff is an acquaintance of Rhodes who was visiting the Apartment the night of April 14, 2015. Plaintiff has a prior felony conviction and was completing a term of parole in relation to that crime. A little before 5:00 p.m., Plaintiff arrived at the Apartment in a Nissan Altima with a female friend. Together, they entered the Apartment. About 15-20 minutes later, Rhodes arrived at the Apartment in a black Chevrolet Malibu, with Monita Roundtree ("Roundtree"), the lessee of the Apartment, and Roundtree's daughter in tow. At approximately 5:20 p.m., Schott called six additional officers to assist in the investigation and arrest of Rhodes. These back-up officers included Viera, Carpenter, Peters, Randazzo, Phillipson, and Rabideau. The officers did not have, nor did they seek, a warrant to search the Apartment. They announced their presence at the Apartment, but nobody opened the door. They entered in order to effectuate Rhodes' arrest. After entering the Apartment, they smelled burnt marijuana and saw marijuana on the dining room table. The officers promptly placed both Plaintiff and Rhodes in handcuffs. They did not arrest either of the two women. Roundtree gave the officers consent to conduct a full search of the Apartment. The officers found drugs and associated paraphernalia, which suggested sale or use of illegal drugs.

While searching the Apartment, the officers found the keys to Plaintiff's Nissan. The officers did not have a warrant to search the Nissan. Nevertheless, Esqueda proceeded to unlock the car and go inside. Shortly thereafter, the officers called the K-9 unit, led by Vernon. Vernon deployed the K-9 unit around the Nissan only. The K-9 unit alerted the officers to

contraband on the passenger's side of the car. Following the alert, the officers again entered the car and recovered a fully loaded gun from either the passenger compartment of the vehicle, (Docket #59 at 3), or the center console, (Docket #54 at 1). Once the gun was seized, the officers stopped using the K-9 unit; no further searches were conducted.

On April 15, 2015, Schott and Peters applied for a search warrant for Plaintiff's residence. The officers described the basis for probable cause and incorrectly stated that the prior evening, Plaintiff had arrived at the Apartment in the same vehicle as Rhodes. The officers obtained the warrant at 5:10 p.m. and executed it at 7:00 p.m. Schott and Peters had a set of Plaintiff's keys, which included his house keys. Despite this, they broke down the door to Plaintiff's residence, threw clothes and property around, left cans of soda in his kitchen, and disposed of their latex gloves on the floor.[1]

As a result of this incident, Plaintiff's parole was revoked. He was charged in Milwaukee County Circuit Court under Wisconsin's felon firearm dispossession law, Wis. Stat. § 941.29(2), Case No. 2015CF002164. Plaintiff filed a suppression motion, claiming that his arrest and the vehicle search were unconstitutional. The court ordered briefing and held several hearings on the motion to suppress. The trial court made findings of fact and ultimately denied the suppression motion, finding probable cause to arrest Plaintiff and to search the vehicle. On December 21, 2016, a jury acquitted Plaintiff of the felon dispossession charge. Nevertheless, because

---

[1]Defendants object that Plaintiff has no personal knowledge of this fact; therefore, his affidavit cannot be used as evidence. Because neither party moved to dismiss the claim for retaliatory search for lack of evidence, this dispute is not material. However, Plaintiff should be prepared to present this evidence in admissible form at trial by, for example, having a witness with personal knowledge testify to the scene.

Plaintiff's parole was revoked, he served additional time in prison from April 2015 to April 2018.

4.   **ANALYSIS**

   4.1   **Heck Bar – All Claims**

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994), holds that a claim for damages under Section 1983 may not be pursued if its success would necessarily imply the invalidity of a criminal conviction or sentence. However, not every damages action is *Heck*-barred. As long as the plaintiff's claims do not necessarily impugn the validity of his conviction or sentence, courts can entertain Section 1983 suits based on conduct that occurred during an investigation or prosecution. *Wallace v. Kato*, 549 U.S. 384, 394 (2007); *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). That is, where the plaintiff's success on the damages claim would not fatally undermine his conviction or sentence, the Section 1983 suit may proceed.

This situation most often arises with respect to claims challenging police investigative conduct under the Fourth Amendment, as it is often the case that an illegal arrest or unlawful use of force can be divorced from the ultimate conviction, thereby avoiding the *Heck* bar. *Gilbert v. Cook*, 512 F.3d 899, 902 (7th Cir. 2008) (holding "[o]nly a claim that necessarily implies the invalidity of a conviction or disciplinary board's sanction comes within the scope of *Heck*.") (quotation marks omitted); *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) (observing that "a violation of the Fourth Amendment does not necessarily impugn the validity of a conviction"); *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995) (holding that "an illegal search or arrest may be followed by a valid conviction."). In *Copus v. City of Edgerton*, the Seventh Circuit remanded Section 1983 claims predicated on Fourth Amendment violations for further proceedings because it was possible that

the government could have obtained a conviction based on other evidence. 151 F.3d 646, 648–49 (7th Cir. 1998). The Seventh Circuit also speculated that the same evidence might have been found through the independent source doctrine. *Id.* at 649. Because the Seventh Circuit could not say with any certainty that the invalidity of the search "necessarily. . .impugn[ed] the validity of [the plaintiff's] conviction," the claim was permitted to move forward. *Id.*

The same dynamic is at play here. The Officer Defendants' alleged Fourth Amendment violations uncovered a series of Plaintiff's parole violations, which led to the parole revocation and re-imprisonment. The question, then, is whether these Fourth Amendment claims necessarily impugn the validity of his prison sentence for revocation. Put another way, if the Defendants had *not* violated Plaintiff's Fourth Amendment rights, would he have necessarily remained on parole?

Plaintiff argues that he would have had his parole revoked notwithstanding the officers' challenged conduct. (Docket #70 at 7). He seems to be saying that the government may have had a basis for revoking his parole even if they had *not* violated his Fourth Amendment rights, which, in light of the facts before the Court, seems to be true. Plaintiff does not dispute that he was associating with a known felon and that he was in the presence of drugs and guns—the latter of which, he does not dispute, were contrary to the terms of his parole. In light of these facts, and Plaintiff's own acknowledgment that the bases for probation revocation are comparatively lower than those required for a criminal conviction, the Court does not find that the Fourth Amendment violations *necessarily* impugn the underlying sentence that he carried out. Additionally, Plaintiff "does not challenge his [revocation] or his sentence," so "*Heck* does not

Page 9 of 16

preclude [him] from raising Fourth Amendment claims in his federal action." *Simpson*, 73 F.3d at 136. Finally, it does not appear that the search of his home, which was predicated on a false warrant, resulted in any kind of material related to his revocation proceedings. Therefore, *Heck* does not bar that claim either.

### 4.2 Issue Preclusion – Plaintiff's Arrest and Vehicle Search

Issue preclusion, also called "collateral estoppel," arises when an issue was actually litigated and finally determined in the earlier case, and the interests of the party against whom preclusion is sought were sufficiently represented in that prior case. *Paige K.B. ex rel. Peterson v. Steven G.B.*, 594 N.W.2d 370, 374 (Wis. 1999); *Lindas v. Cady*, 515 N.W.2d 458, 463–64 (Wis. 1994). Thus, issue preclusion does not bar other claims that might have been brought in the prior proceeding, but in some instances it can apply even when the parties in the prior suit are not identical to those in the instant suit. *Montana v. United States*, 440 U.S. 147, 153 (1979). To determine whether issue preclusion bars a litigant's claim, Wisconsin courts apply a two-step analysis: (1) they ask whether issue preclusion can, as a matter of law, be applied and, if so, (2) whether the application of issue preclusion would be fundamentally fair. *Rille v. Physicians Ins. Co.*, 728 N.W.2d 693, 702 (Wis. 2007).

Issue preclusion only applies, as a matter of law, if the issue was "actually litigated" in the former proceeding. The following factors indicate whether an issue was actually litigated: (1) the parties were fully heard; (2) the former court's decision was the result of a well-reasoned opinion; (3) the decision was subject to appeal, or in fact appealed; and (4) the decision was "procedurally definite." Restatement (Second) of Judgments § 13

cmt. g; *Boerner v. LVNV Funding LLC*, 326 F. Supp. 3d 665, 678–79 (E.D. Wis. 2018).

The constitutionality of Plaintiff's arrest and the search of his vehicle were actually litigated in the state court proceeding. Plaintiff's counsel filed a motion to suppress the fruits of the evidence found in connection with the arrest and the vehicle search, and requested an evidentiary hearing. The state court held four hearings on the issue, wherein six of the officers testified. Following the hearings, the court ordered additional briefing and ultimately denied the motion to suppress. Plaintiff, with new counsel, filed a motion for reconsideration. The state court issued an oral ruling explaining its reasoning and denying the motion for reconsideration.

Once the Court determines that an issue was actually litigated, it turns to the question of whether applying issue preclusion would be "fundamentally fair." *Rille*, 728 N.W.2d at 702–03. The following factors indicate whether it would be "fundamentally fair" to apply issue preclusion: (1) the party against whom preclusion is sought was able to seek review of the judgment; (2) the issue deals with a question of law, and the law has not changed; (3) there is no significant difference in quality or extensiveness between the two courts' litigation processes; (4) the party seeking preclusion had an equal or higher burden of persuasion in the former proceeding; and (5) there are no individual or public policy concerns that weigh against applying issue preclusion. *Michelle T. by Sumpter v. Crozier*, 495 N.W.2d 327, 330–31 (Wis. 1993); *Boerner*, 326 F. Supp. 3d at 679.

The factors here all point in favor of applying issue preclusion. Plaintiff had ample opportunity to seek review of the judgment in state court through a motion for reconsideration. The issue before this Court is identical to the issue before the state court, i.e., whether the arrest and car

search violated Plaintiff's Fourth Amendment rights. There have been no changes in the sea of Fourth Amendment law; therefore, there is no reason for the Court to re-evaluate the state court's conclusion. Additionally, the quality and extensiveness of the state court's litigation processes is beyond this Court's reproach. The government's burden in the state court litigation was higher than it is here, as that was a criminal proceeding, and this is a civil proceeding. Finally, there are no individual or public policy concerns that work against the Court applying issue preclusion. Therefore, the Court finds that issue preclusion bars the claims related to the unlawful arrest and vehicle search.[2]

### 4.3 False Statements in Arrest Warrant – Peters and Schott

"[A] warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox v. Smith*, 342 F.3d 651, 658 (7th Cir. 2003) (citing *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742–43 (7th Cir. 2003); *Olson v. Tyler*, 771 F.3d 277, 281 (7th Cir. 1985)).

There were three officers on the scene—including Schott, who applied for the warrant—who saw Plaintiff and Rhodes arrive in different cars. Yet in the application for the warrant, Peters and Schott stated that Plaintiff and Rhodes arrived together in the same car. Construing the facts in favor of the non-movant, as the Court must at this stage, a reasonable

---

[2] Because the civil conspiracy claim under 42 U.S.C. § 1983 was premised on the unlawful arrest and car search, (Docket #3 at 7), this claim must also be dismissed.

jury could find that Peters and Schott made a false statement with reckless disregard for the truth.

However, the false statement must also have been "necessary to the determination that a warrant should issue." *Knox*, 342 F.3d at 658. On this point, the claim fails. While the fact that Rhodes and Plaintiff arrived in the same car certainly adds to the probable cause that they were involved in a joint drug trafficking venture, the omission of this detail does not gut the warrant of probable cause. In light of the facts that Plaintiff and Rhodes met at the same house in the presence of drugs and guns, and given the presence of a gun in Plaintiff's car, it is likely that a judge would have found probable cause for a joint trafficking venture anyway, and issued a warrant to search Plaintiff's home. Therefore, this claim is dismissed.

### 4.4 Conspiracy Claim – All Defendants

The showing for a conspiracy under 42 U.S.C. § 1985(3) requires "(1) the existence of a conspiracy; (2) a purpose of depriving a person or class of persons of equal protection of the laws; (3) an act in furtherance of a conspiracy; and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304–05 (7th Cir. 2011) (citing *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999)). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Hernandez*, 197 F.3d at 262. A police conspiracy to violate a Plaintiff's constitutional rights

"cannot be inferred solely upon the fact that the alleged conspirators were white and were from a predominantly white area." *Sow*, 636 F.3d at 305. Rather, there must be evidence that the conspirators had "an agreement to inflict injury or harm." *Id.*

Plaintiff states that the fact that nine people were called in to arrest one black man points to a conspiracy. This fact, alone, is insufficient to allow a reasonable jury to conclude that there was a conspiracy. There needs to be some evidence that an agreement to violate Plaintiff's constitutional rights existed—"some evidence that would allow a reasonable jury to conclude that a meeting of the minds had occurred." *Hernandez*, 197 F.3d at 262. There is no evidence that such an agreement was in place.

### 4.5     Retaliatory Search of House – Peters

Peters argues that the claim regarding the retaliatory search of Plaintiff's home should be dismissed as to him because he was not personally involved in the search. The doctrine of personal involvement states that "[a]n individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). Peters was involved in securing a warrant to search the home, and is therefore directly implicated in the cause of action regarding the false statements therein. *See* Section 4.3, *supra*. However, his lack of involvement in the actual search of Plaintiff's residence means that he cannot be held liable for any retaliatory conduct that occurred as part of that search. Additionally, there is no evidence that he caused the officers involved in the search to conduct it in an unreasonable or retaliatory fashion. Therefore, this claim is dismissed against Peters.

5.  **CONCLUSION**

For the reasons stated above, Plaintiff's claim for unlawful arrest and unlawful search of the car are barred by issue preclusion, and will therefore be dismissed. The Section 1983 civil conspiracy claim premised on those violations will also be dismissed. Additionally, the Section 1985 civil conspiracy claim and the false arrest claim will be dismissed for want of evidence. Neither party moved to dismiss the unlawful search of the Apartment, therefore that claim must go forward against all defendants despite the fact that it is undisputed that Defendants had consent to search the Apartment. (Docket #73 at 3). The Court would entertain another motion for summary judgment on that claim, in light of the lack of dispute of material fact, if the motion is received by **July 19, 2019**. Finally, the claim for retaliatory ransacking of Plaintiff's residence will go forward against all defendants except for Peters, who was not personally involved in the search of Plaintiff's residence.

Accordingly,

**IT IS ORDERED** that Defendant Kenneth Peters' motion for summary judgment (Docket #53) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the Officer Defendants' motion for summary judgment (Docket #58) be and the same is hereby **GRANTED in part and DENIED in part**, as stated in the text of this order;

**IT IS FURTHER ORDERED** that the Fourth Amendment claims for false arrest, unlawful search of Plaintiff's vehicle, and conspiracies to violate Plaintiff's civil rights under 42 U.S.C. §§ 1983 and 1985 be and the same are hereby **DISMISSED** against all defendants;

**IT IS FURTHER ORDERED** that the Fourth Amendment claims for unlawful acquisition of a warrant be and the same are hereby **DISMISSED** as to Defendants Kenneth Peters and John Schott;

**IT IS FURTHER ORDERED** that the Fourth Amendment claim for unreasonable and retaliatory search of the Plaintiff's home be and the same is hereby **DISMISSED** as to Defendant Kenneth Peters; and

**IT IS FURTHER ORDERED** that Defendants submit any additional motion for summary judgment by **July 19, 2019**.

Dated at Milwaukee, Wisconsin, this 28th day of June, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge